UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
:
BENIHANA INC., as successor to BENIHANA :
NATIONAL CORP., :     14 Civ. 792 (PAE)
:
Petitioner,    :     OPINION & ORDER
:
-v-                              :
:
BENIHANA OF TOKYO, LLC, as successor to :
BENIHANA OF TOKYO, INC., :
:
Respondent.    :
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/29/16

PAUL A. ENGELMAYER, District Judge:

Before the Court is the August 6, 2015 Report and Recommendation of Magistrate Judge Ronald L. Ellis. Dkt. 30 ("the Report"). The Report recommends that the Court award petitioner Benihana Inc. ("BI") $68,469.70 in attorneys' fees and $5,436.48 in costs related to BI's successful efforts to obtain a preliminary injunction before this Court against respondent Benihana of Tokyo, LLC ("BOT"), aimed at enforcing the terms of a license agreement in advance of arbitration. For the following reasons, the Court adopts the Report's recommendation that BI be awarded fees and costs. The Court also adopts in full the Report's recommendation as to the amount of costs to be awarded. As to attorneys' fees, however, where the Report recommended a 60% across-the-board reduction in compensable billed hours, the Court adopts a lesser reduction, with the amount of the reduction keyed to the timekeeper. The result is that the Court approves a fee award of $113,423.78, and a total award of $118,860.26.

I.      **Background**

The Court assumes familiarity with the underlying facts and procedural history of this case, as set forth in detail in this Court's bench ruling granting BI's petition for a preliminary

injunction and ruling that BI was entitled to attorneys' fees and costs associated with the petition. Dkt. 19 ("Tr."), at 41–59. The Court here sets forth only the most central facts and procedural history.

On February 7, 2014, BI filed a petition for a preliminary injunction in aid of arbitration. It sought to enjoin BOT from committing various alleged breaches of the license agreement that governed BOT's operation of a "Benihana" restaurant in Hawaii. Dkt. 2 ("Petition" or "Pet."). BI sought the preliminary injunction in aid of an arbitration proceeding which it had initiated under the license agreement. The arbitration addressed BI's termination of the agreement on account of BOT's alleged breaches.[1]

Before BI sought that preliminary injunction, BOT, in fall 2013, had initiated an action in New York State Supreme Court, in which it sought a temporary restraining order to extend BOT's time to cure its alleged breaches until after the conclusion of the arbitration proceeding, which had not then commenced. BI removed that action to this Court. This Court denied BOT's application for a restraining order, finding that BOT, far from showing a likelihood of success on the merits, was not likely to prevail on the merits, and appeared in breach of multiple provisions of the license agreement, including by selling hamburgers out of its Hawaii restaurant, a practice prohibited by the agreement. Tr. 42–44; *see* 13 Civ. 6766. After that proceeding, despite BOT's representation that it would cease such violations, BI determined that BOT had continued to be in breach, as to multiple business practices, leading it to file its petition before this Court. Tr. 43–45.

---

[1] The arbitration has since concluded. Separately pending before the Court is BI's application to confirm in part, and to vacate and modify in part, the arbitral award, and BOT's cross-application to confirm the award in its entirety. *See* 15 Civ. 7428. The present decision does not address the arbitration or the merits of the arbitral award.

On February 14, 2014, in support of the petition, BI submitted a brief and a declaration, with exhibits attached. Dkts. 8–9. On February 20, 2014, BOT submitted a brief in opposition and two affidavits, with exhibits attached. Dkts. 12–14. On February 24, 2016, BI submitted a reply brief, and a declaration attaching additional exhibits. Dkts. 15–16. On February 26, 2016, the Court heard argument. The Court issued a lengthy oral decision from the bench, in which it granted BI a preliminary injunction, enjoining various practices of BOT's, including those relating to the sale of hamburgers and various challenged advertising and marketing practices. The Court also found that BI was entitled to recover the reasonable attorneys' fees and costs it incurred in its preliminary injunction action, and referred the matter to Magistrate Judge Ellis for an inquest into such fees and costs. Tr. 53–59; *see also* Dkts. 17–18.[2]

On March 5, 2014, before the Magistrate Judge, BI filed declarations of its counsel, and attached exhibits, reflecting BI's costs incurred, its counsel's contemporaneous time records related to BI's preliminary injunction action, and counsel's regular billing rates and professional biographies. Dkts. 21–22. BI is represented in this matter by the law firm of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. ("Stearns Weaver"), in Miami, Florida, and, as local counsel, by Clarick Gueron Reisbaum LLP ("Clarick Gueron" ). *Id.*

On March 14, 2014, counsel for BOT filed a declaration, with an attached exhibit, opposing BI's request for reimbursement of costs and attorneys' fees. Dkt. 25 ("BOT Opp."). BOT challenged the award on the grounds that the issue was not ripe for determination. It argued that BI's entitlement to fees instead should be decided by the arbitration panel after it

---

[2] The Court, however, ruled that BI was not entitled, in the instant action, to recover fees and costs arising out of BOT's earlier action for a preliminary injunction.

determined whether BOT was the breaching party. *Id.* ¶¶ 2–5. BOT also argued that the attorneys' fees BI sought were excessive. *Id.* ¶¶ 6–11.

On August 6, 2015, Magistrate Judge Ellis issued the Report. In a careful and thorough opinion, the Report rejected BOT's argument that the award of costs and attorneys' fees was not ripe for determination. It noted that this Court had already ruled that BI was entitled to receive costs and attorneys' fees. Report at 3. With regard to attorneys' fees, the Report recommended that the Court award BI $68,469.70, representing 40% of the fees BI requested ($171,174.25). *Id.* at 9–10. The Report found that BI's counsel's hourly rates were reasonable, *id.* at 5–6, but that a 60% across-the-board reduction of BI's counsel's hours (and hence its compensable fees) was warranted because of widespread block billing and because the hours counsel expended in pursuing the preliminary injunction were excessive and unreasonable, *id.* at 6–10. Finally, the Report recommended awarding BI $5,436.48 in costs, which it found reasonable. *Id.* at 10.

On August 24, 2015, BI filed objections to the portion of Judge Ellis's Report finding the hours expended by BI's counsel excessive and imposing the 60% reduction in fees. Dkt. 31 ("BI Obj."). BOT did not file any objections to the Report.

## II.     Discussion

### A.     Legal Standards

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Ruiz v. Citibank, N.A.*, No. 10 Civ. 5950 (KPF), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014) (quoting *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009), *aff'd*, 453 F. App'x 88 (2d Cir. 2011) (summary order)) (internal

quotation marks omitted); *see also, e.g.*, *Mims v. Walsh*, No. 04 Civ. 6133 (BSJ), 2012 WL 6699070, at *2 (S.D.N.Y. Dec. 23, 2012) (citing *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006)).  Where a party timely objects to a Report and Recommendation, the district court reviews those portions of the report to which the party objected *de novo*.  28 U.S.C. § 636(b)(1)(C).

      **B.**      **Issues Other Than Hours Expended**

With respect to the portions of the Report as to which no objections have been made, the Court finds no clear error.

In particular, Judge Ellis was correct to reject BOT's argument that the issue of awarding costs and fees was not ripe for determination.  Article 8.5 of the license agreement provides that "[BOT] agrees to pay all costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by [BI] in connection with the enforcement of this Article 8 or Article 5 provided that [BOT] is determined to be the breaching party."  Report at 3 (quoting license agreement).  As Judge Ellis rightly noted, this Court had already held that BI was entitled to an award of costs and attorneys' fees under Article 8.5, having successfully obtained a preliminary injunction to enforce the provisions of the license agreement.  Tr. 57–58.

BOT's argument before Judge Ellis was that Article 13 of the license agreement required that the award of costs and attorneys' fees also be brought in arbitration, and that such an award could not be made until an arbitrator determined that BOT had been the breaching party.  Article 13, however, requires the arbitration of any disputes concerning BI's *termination* of the license agreement.  It does not relate to applications like BI's for preliminary relief in aid of arbitration.  BOT's argument was clearly incorrect, and Judge Ellis properly rejected it.[3]

---

[3] Since the Report was issued, the arbitration proceeding regarding BI's termination of the license agreement has concluded.  Pertinent here, the arbitral panel found that BOT was the

The Court also finds no clear error in Judge Ellis's determination that the hourly billing rates of BI's counsel, and the $5,436.48 in litigation costs that BI sought, were reasonable. Report at 5–6, 10.

### C. Hours Expended

The one portion of the Report to which BI objects is its finding the hours expended by BI's counsel excessive, and its resulting recommendation of a 60% reduction in the fees sought by BI. On its *de novo* review, the Court finds that BI's time records do reflect substantial block billing, and that there are sufficient indications of duplicative work to merit a reduction in the fee award from that sought. However, the Court, drawing upon its familiarity with the proceedings at issue, finds that a less extreme reduction than that recommended by the Report is merited, and that a more nuanced assessment of the reasonable amount of the reduction is made by keying the reduction to the particular timekeeper.

#### 1. Parties' Arguments and the Report

Before Judge Ellis, BOT argued that BI's requested fees were unreasonable, because BI's counsel's time records reflected the practice of "block billing," making it hard to determine the amount of time counsel reasonably spent on individual tasks, BOT Opp. ¶ 8, and because the

---

breaching party and that BI was entitled to recover costs and attorneys' fees in connection with the breach. *See* 14 Civ. 224, Dkt. 80, Ex. ("Award"), at ¶¶ 103–117. In awarding BI costs and attorneys' fees, the arbitration panel deducted the $171,174.25 in fees sought in the present action, such that there is no possibility of a double recovery here. *Id.* at ¶ 116. In its award, in calculating a fair and reasonable award for attorneys' fees, the panel found, as did Judge Ellis, that BI's counsel's time records frequently reflected block billing; it also found "excessive billing for basic legal research . . . [and] numerous entries that reflect duplicate work on the same tasks and internal conferences among the many lawyers that worked on this matter." *Id.* ¶¶ 113–14. The panel therefore found it reasonable to make an across-the-board reduction of 20% to trim excess time charges from BI's fee application. *Id.* ¶ 117.

6

time counsel spent on the matter was excessive and involved duplicative work by multiple persons, *id.* ¶¶ 9–10.

Judge Ellis agreed. He found that BI's counsel's invoices reflected block billing, in that their "time-records frequently combine multiple tasks into one time entry." Report at 8. He also found that the number of hours counsel expended was excessive and unreasonable because "the expenditure of five attorneys' time was duplicative and unnecessary" in the context of a "Petition for a Preliminary Injunction concerning a straightforward contract dispute." *Id.* Judge Ellis noted that "routine and educational legal research" is not to be "subsidized" through an award of attorneys' fees. *Id.* at 9. And, he stated, because "[BI] originally filed an action for an injunction in aid of arbitration in New York Supreme Court and later removed the proceeding to federal court in a separate proceeding," the "issues researched and briefed in that action [were] substantially similar to those raised here," counseling against compensating BI for hours worked on overlapping research and issues here. *Id.* As an example of excessive and duplicative work, Judge Ellis noted that BI's counsel had "review[ed] the underlying license agreement (a thirty page document with which it became familiar in the prior proceeding) approximately thirteen times, over approximately forty hours, in connection with this action." *Id.*

Based on these findings, Judge Ellis found "exorbitant" BI's bid for a $171,174.25 fee award, reflecting 338.65 attorney hours across the five attorneys at BI's two law firms. *Id.* at 6, 9. He concluded that "an across-the-board reduction of 60% is fair and reasonable." *Id.* at 10.

BI objects to the Report on two grounds. First, BI argues that the Report, in perceiving excessive hours, is premised on a factual error about the nature of the proceedings. BI notes that it was BOT, not BI, that had filed for a preliminary injunction in New York Supreme Court, and whose initial application was resolved by this Court. As such, BI argues, while there was some

overlap in the governing legal standards, it was in this action that BI for the first time bore the burden of establishing the prerequisites for a preliminary injunction.  Moreover, BI argues, a number of factual issues—including the particular provisions of the license agreement that were being litigated—were distinct between the two actions.  BI Obj. at 7–8.  BI also argues that Judge Ellis unfairly minimized the issues involved in this action—they were, it argues, more complex, and more was at stake, than in a "straightforward contractual dispute."  *Id.* at 8.

Second, BI argues that even if the hours expended by its counsel were excessive or its billing practices flawed, the 60% reduction recommended by the Report is too great.  BI notes that this percentage far exceeds the percentage reductions typically made for excessive hours or block billing, which generally are between 15–30%.  *Id.* at 10 (citing *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 57 (S.D.N.Y. 2015) (collecting cases)).

### 2.   Applicable Legal Standards

"In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case."  *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997).  A claimant is only to be compensated for "hours reasonably expended on the litigation," and not for "hours that are excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).  If the number of hours stated is disproportionate to the work performed, the Court should reduce the stated hours accordingly.  *See id.*; *Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d 477, 487 (2d Cir. 2002).

In determining whether the hours expended by counsel were reasonable, a court may draw on its "first-hand knowledge of [the] litigation and its extensive contact with the parties."  *Luciano*, 109 F.3d at 117.  Where it is difficult to make line-item reductions to adjust for excessive billing, "the court has discretion simply to deduct a reasonable percentage of the

8

number of hours claimed as a practical means of trimming fat from a fee application." *Rodriguez ex rel. Kelly v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)) (internal quotation marks omitted); *see N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1145–48 (2d Cir. 1983) (approving percentage reductions to correct for deficiencies in fee application, including "excessive claims for certain tasks" and "inadequate detail in documentation," *id.* at 1142).

Block billing refers to "grouping multiple tasks into a single billing entry, so as to leave unclear how much time was devoted to each constituent task." *Themis Capital v. Dem. Rep. Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100, at *6 (S.D.N.Y. Sept. 4, 2014). As a general rule, this practice is disfavored. That is because it impedes both the client's ability to understand the precise time allocable to the tasks for which it is being billed, and, in the event of a later fee application, the court's ability to assess whether the time expended on any given task was reasonable. *See Green v. City of New York*, 403 Fed. App'x 626, 630 (2d Cir. 2010) (summary order); *Ramirez v. Benares Indian Rest. LLC*, No. 14 Civ. 7423 (JMF), 2015 WL 926008, at *2 (S.D.N.Y. Mar. 4, 2015) (collecting cases).

However, block billing does not automatically preclude recovery for the hours billed. Courts have generally made reductions in block-billed hours in situations where (1) there was reason to believe that the hours billed were independently unreasonable; (2) the block billing involved aggregating tasks that were not all compensable; or (3) the number of hours block billed together was so high (*e.g.*, five hours or more) as to create an unacceptable risk that the aggregated total exceeded reasonable hours worked on compensable projects. *See Adusumelli v. Steiner*, Nos. 08 Civ. 6932, 09 Civ. 4902, 10 Civ. 4549 (JMF), 2013 WL 1285260, at *4 (S.D.N.Y. March 28, 2013); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515

9

(S.D.N.Y. 2010) ("While block billing is disfavored and may lack the specificity for an award of attorneys' fees, it is not prohibited as long as the court can determine the reasonableness of the work performed." (citation and internal quotation marks omitted)); *see also Abdell v. City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (finding block billing unproblematic where it was "for temporally short entries combining related tasks"); *Charles v. City of New York*, No. 13 Civ. 3547 (PAE), 2014 WL 4384155, at *5–6 (S.D.N.Y. Sept. 4, 2014) (reducing fee award based on block-billed entries spanning between 5–10 hours each).

### 3. Application

The Court has closely reviewed the time records of BI's counsel. This review yields the unavoidable conclusion that BI's lead counsel (Stearns Weaver) frequently block billed, and that there were numerous days in which a Stearns Weaver timekeeper worked five or more hours while clustering the reported tasks into a single, disaggregated entry.[4]

By far this practice is most prevalent in the time entries of BI's lead counsel, Alan H. Fein, Esq., who worked the most hours and charged the highest hourly rate on this matter. Mr. Fein's time entries are further disquieting in that—with one exception, a single time entry for 1.5 hours—each and every one of Mr. Fein's 33 time entries reflects hours billed rounded off to the nearest hour. (Specifically, Mr. Fein's time sheets reflect one entry for 1.0 hours; three entries each for 2.0, 3.0, and 7.0 hours; 11 entries for 4.0 hours; two entries each for 5.0 and 8.0 hours; and seven entries for 6.0 hours.) Although the Court has no doubt that, on each day in question,

---

[4] Although local counsel's time entries reflect a small degree of what is technically block billing, its time entries for the most part fully comport with this Court's expectations. Moreover, where local counsel's daily entries technically qualify as block billing insofar as they do not permit the Court to isolate the specific amount of time devoted to each particular task, the entries reflect admirable specificity and detail, often listing numerous tasks performed that day. Accordingly, the Court's critique here of problematic block billing is limited to Stearns Weaver.

Mr. Fein estimated in good faith the hours that he recalled working—and although the Court was impressed by the caliber of Mr. Fein's legal work, including his written and oral arguments, and by his evident preparation—it is inconceivable that on each of these 32 days Mr. Fein worked a round number of hours. (Every other timekeeper's time entries were rounded to a tenth of an hour.[5]) This degree of inexactitude and casualness about recording hours is a far cry from the expectations in this District in cases where attorneys apply to this Court to shift fee obligations to an opposing party. Simply put, such time entries make it, regrettably, impossible for the Court to make an informed assessment of how much time the attorney in fact devoted to each distinct legal task, on a particular day or over the course of his work on this matter for BI.[6]

The Court therefore agrees with Judge Ellis that a material discount from the hours reported must be made to take account of this obfuscatory practice.

The Court is also constrained to agree with Judge Ellis that, independent of the block billing, BI's counsel's bills reflect a degree of duplicative work. Although, for the reasons noted, counsel's time entries make it impossible to allocate the precise amount of time that BI's legal team devoted to each discrete task, these time entries, in the aggregate, reflect a very substantial

---

[5] One entry was not rounded to the tenth of an hour, but instead showed a quarter of an hour of time worked. *See* Dkt. 22-1 (entry for 1/14/14).

[6] Several examples (drawn from Dkt. 21-1) illustrate the elusiveness of these time entries. *See, e.g.*, AHF entries for 1/27/14, 1/28/14, and 1/29/14 (6.0 hours, 7.0 hours, and 7.0 hours respectively for "Review[ing] License Agreement; draft[ing] and revis[ing] complaint; interoffice conferences, telephone conferences, and emails regarding status and strategy"); AHF entries for 2/3/14, 2/4/14, and 2/5/14 (4.0 hours, 4.0 hours, and 6.0 hours respectively for "Review[ing] and revis[ing] draft complaint and related papers; interoffice conferences, telephone conferences and emails regarding status and strategy; revis[ing] termination letter"); AHF entry for 2/11/14 (6.0 hours for "Follow-up regarding service and order to show cause papers, acceptance as related case; communications with Hawaii investigator"); AHF entry for 2/24/14 (7.0 hours for "Final revisions and completion of reply brief; interoffice conferences, telephone conferences, emails regarding evidence, preparation for hearing").

number of hours spent on two tasks: (1) researching general legal standards, and (2) reviewing the underlying BI/BOT license agreement.[7] It also appears that such work was performed, or at least reviewed in some detail, by each of the five attorneys who worked on this matter. The time records also reflect a significant number of conferences among multiple timekeepers on the case, without a clear explanation of need. Although there may well be more justification than meets the eye for these apparent inefficiencies, counsel's billing records do not supply it, and neither does Mr. Fein's attorney declaration in support of full reimbursement for counsel's legal fees. On BI's fee-shifting application, this practice, too, requires discounting counsel's hours from those billed to BI.

The Court, however, does not share the Report's assessment that the action before this Court is fairly cast as a "straightforward contract dispute." In fact, the action raised multiple issues under the agreement. These included not only whether BOT's sales of hamburgers and other food items were authorized under the agreement. Also at issue were various marketing and advertising practices in which BOT either engaged or appeared to have engaged.

As to each of these practices, there was, first, a need to establish for the Court, factually, BOT's precise conduct. At least in part, this conduct appeared to have shifted between BOT's

---

[7] BI is correct that the Report incorrectly recites that it was BI, not BOT, that was the movant in the first injunctive proceeding (and for which reimbursement of fees is not available). BI is also correct that the factual and legal issues in the first proceeding, although overlapping with those at issue in this proceeding, presented far from a complete overlap. Nevertheless, with respect to the legal standards governing temporary relief and preliminary injunctions in this State and in this District, the standards governing this proceeding were substantially the same as in the proceeding brought by BOT, and BI, albeit as respondent, addressed and applied those principles in that proceeding. Therefore, limited new legal research on these background standards was merited. (That said, BI's application for relief in the second proceeding did raise new issues. Most notably, there was briefing on the scope of the Court's authority to award preliminary relief in aid and in advance of arbitration. These issues were not raised by BOT's application, and justified new legal research.)

initial application for preliminary relief and BI's action. For example, with respect to the sale of burgers, after the first proceeding, BOT, while continuing to cook the offending burgers within its restaurant, adopted the practice of selling them to customers outdoors, in an adjoining space. BOT rationalized that this brought its conduct outside the scope of the license agreement's ban on selling unauthorized food. BI was similarly required, in its submissions, factually to pin down a series of marketing practices of BOT's whose legality under the agreement BI contested.

BI next was required, as to each practice at issue, to show why the license agreement prohibited that practice. Although the Court's ultimate conclusion was that these legal issues were not close ones, BOT vigorously contested BI's positions. This required BI to carefully respond, practice by practice. Finally, as to all practices, BI was required to show why judicial intervention in the form of a prohibitory injunction was needed, before the upcoming arbitration, to avoid irreparable harm, and why it was justified by the balance of hardships.

The Court's assessment is that BI's written and in-court legal submissions, addressing the contested conduct practice by practice, reflected clear, effective, and proportionate advocacy. The length and level of detail of BI's written submissions was justified, both by the significance to BI of the matters at issue and by the fact that BOT contested BI's arguments virtually at every turn. Careful preparation for argument before the Court on BI's application was, similarly, necessary and appropriate given BOT's stout opposition. Indeed, it is safe to say that the fees that BI incurred would have been materially less had BOT chosen not to defend so vigorously certain brazenly prohibited practices.

Considering all the above factors, the Court's judgment is that, for all timekeepers except Mr. Fein, an across-the-board reduction of 20% in hours expended is necessary. This reduction is aimed at eliminating the apparent inefficiencies and duplication of work that the Court has

perceived. For Mr. Fein, given the billing infirmities reviewed above, however, a much more substantial reduction is needed. The Court's judgment is that a 45% reduction in Mr. Fein's reported hours is necessary. The Court has reached this conclusion after careful and considered review. These determinations are independent of, but mindful of, the reduction made by the arbitration panel in its fee award. They are also is in line with those made by courts in this District in similar circumstances. *See, e.g., Beastie Boys*, 112 F. Supp. 3d at 57.

Applying these reductions, the Court's math yields a revised fee award of $113,423.78. This reflects an award of $91,490.38 for the hours worked by Stearns Weaver and an award of $21,933.40 for the hours worked by Clarick Gueron.

## CONCLUSION

For the foregoing reasons, and for the reasons stated at the February 26, 2014 hearing, the Court hereby adopts Judge Ellis's Report and Recommendation, as modified above. The Court awards Benihana Inc. reasonable attorneys' fees and costs, in the total amount of $118,860.26 ($113,423.78 for attorneys' fees, plus $5,436.48 for costs).

The Clerk of Court is directed to enter judgment.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: June 29, 2016
       New York, New York